UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                      Case No: 17-CR-122

RAMOR DIS TICARET, LTD.,
a/k/a The Ramor Group,
RESIT TAVAN, and
FULYA KALAFATOGLU OGUZTURK,

        Defendants.

## DEFENDANT'S MOTION FOR PRETRIAL RELEASE ON BOND

NOW COMES the Defendant, RESIT TAVAN, (hereinafter "Tavan") by and through his retained counsel, Nejla K. Lane ("Lane") of Lane Keyfli Law, Ltd., moves this Honorable Court, pursuant to 18 United States Code Section §3142, for release from the Waukesha County Jail pending trial on reasonable bond. In support of said request, Tavan asserts the following:

1. Tavan has been continuously incarcerated since his arrest in Romania – on June 8, 2017.

2. On December 8, 2017, Tavan was extradited to the United States – Wisconsin; he has been held in Waukesha County Jail since such time without bond.

3. Pursuant to 18 U.S. Code §3142, Tavan respectfully moves this Court for release pending trial under the following conditions which will eliminate the risk of flight.

    a. Tavan has rented an apartment close to the Court House in Milwaukee, Wisconsin, where his family will hopefully join him soon. (Lease available upon request).

    b. Tavan will submit to electronic Global Positioning System (GPS) monitoring.

1

    c. Tavan will regularly check in with Lane, his retained counsel who is willing to act as a third-party custodian.

4. Tavan has no criminal background, in fact he has never before been charged with any criminal act and he poses absolutely no danger if released into the community awaiting his trial in the United States. (See Exhibit 1, Turkish Police Background check).

5. Upon his release, Tavan will be able to assist his attorneys, whose office is located in Chicago, Illinois, in preparing his case for trial. Tavan does not speak English and has been struggling greatly with the language barrier in jail. Lane is aware of the language barrier and has the benefit of a Turkish-speaking legal assistant to help adequately prepare Tavan for his trial.

6. Tavan is a married businessman with three (3) young children who currently live in Turkey with their mother. Lane, who is also a seasoned immigration attorney, is helping Tavan's family obtain visas to come to the U.S. and join their father and husband. Lane is seeking a recommendation letter from the Consul General of the Republic of Turkey in Chicago, which will move the visa process along. Tavan's family will give him emotional support and their reunification will allow him to prepare for trial more effectively. (See Exhibit 2, Family Photos).

7. Tavan has been separated from his family since June 8, 2017 and this prolonged absence has taken its toll on his wife and children.

    a. Tavan's wife is currently being treated for severe depression and anxiety stemming from Tavan's incarceration and lack of support while she cares for three children on her own. (Records available upon request).

b. Tavan has a three (3) year old son, Yusuf. At such a young age, Yusuf's childhood development is especially vulnerable, and his father's absence has already caused several setbacks, including: separation anxiety, defiance, combativeness, and articulation problems. (Records available upon request).

c. Tavan has raised his step-son, Kaan, like his own child since 2012. After Tavan's incarceration, Kaan has been emotionally struggling and is showing abnormal behavior for an eight (8) year old child, evidenced in how he refused to celebrate his birthday without his "father" present. (Records available upon request).

8. Tavan suffers from depression and a lingering back injury. Being held in the Waukesha County Jail, where he is unable to communicate with his family easily, is exacerbating his pre-existing mental and physical health issues.

9. Pursuant to 18 U.S. Code § 3142(g), the judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, and consider the available information concerning:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of evidence against the person; (3) The history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

**I.     The Nature And Circumstances Of The Offenses Charged and the Weight of the Evidence Favor Tavan Being Released On Bond.**

10. Count 1 of the Indictment accuses Tavan of knowingly and intentionally, conspiring to defraud the United States by impairing, impeding, and obstructing the lawful

governmental functions of the United States Department of Treasury and to commit an offense against the United States through smuggling.

   a. The potential sentence for this charge is 0-5 years in prison.

11. Counts 2-4 of the Indictment claim Tavan knowingly and willfully violated the embargo against Iran by attempting to export and causing to be exported goods from the United States to Iran without having first obtained the required authorizations.

   a. These Counts have a potential sentence of 0-20 years in prison.

12. Counts 5-7 of the Indictment claim that Tavan fraudulently exported items in violation of the laws of the United States on three (3) different occasions.

   a. These Counts have a potential sentence of 0-10 years.

13. Counts 8-13 claim that Tavan transmitted and transferred monetary instruments and funds from Turkey to a place inside the United States with an unlawful purpose on five (5) different occasions.

   a. These Counts have a potential sentence of 0-20 years.

14. The aforementioned charges are not as serious as they sound. Tavan simply got caught up in a misunderstanding and the charges relate to imports from his business. Tavan's business had a wide and varied scope. This scope includes food import and export, construction, tourism, real estate transactions, just to mention a few areas. The goods relevant to his charges are just two engines purchased in Wisconsin, which are outside of the scope of his normal business or expertise and he simply made a mistake. These charges will be addressed at trial.

15. After reviewing the discovery from the Government, it appears that their case is weak and based on multi language translated materials and/or hearsay at best. Considering the aforementioned factors, Tavan should be released on bond.

16. At a Detention Hearing, the Judicial Officer assesses what conditions of release would assure the safety of any other person and the community. In doing so, they consider whether the case involves crimes of violence, an offense where the maximum sentence is life imprisonment or death, offenses where the maximum imprisonment is ten years or more as relating to Controlled Substances, and/or felonies involving minor victims or the possession/use of a firearm. *See* 18 U.S. Code § 3142(f)(1)(A) – (E).

    a. Tavan has not been accused of any of these types of crimes.

17. While considering the strength of the Government's case and weight of the evidence in regard to pretrial detention, Courts have found that "this is, however, the least important of the various factors. Moreover, detention hearings are not meant to be mini-trials." *United States v. Hammond*, 204 F. Supp. 2d 1157, 1165 (E.D. Wis. 2002).

18. Considering how the Eastern District of Wisconsin referred to weight of the evidence as the least important of the relevant factors of pretrial release from detention, the evidence against Tavan is not strong enough for him to remain in jail until his trial proceeds. Detention hearings are not meant to be a trial on the facts of the case.

**II.     Tavan's History and Characteristics Demonstrate Why He Should Be Released on Bond**

19. Under 18 U.S. Code §3142(g)(3)(A), the Judicial Officer can take into account the available information concerning the "person's character, physical and mental condition, family ties, employment, financial resources."

20. The 7th Circuit stated "evidence of economic and social stability, coupled with the absence of any relevant criminal record, at least suggests that defendants would be less likely to engage in criminal activity while on pretrial release." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

21. Tavan's personal characteristics also support release on bond. He is forty years old and has spent his entire life in Turkey. As a successful businessman, Tavan oversaw many transactions, imports, and exports. More importantly, Tavan is a loving father and husband.

22. Tavan has been incarcerated from June 8, 2017 up until December 8, 2017 in Romania and since his arrival to the U.S., he has been incarcerated in the Waukesha County Jail. Throughout this time, he has been separated from his wife and kids. As this case was labeled complex and taken out of the "speedy trial" schedule, there is no sight of the actual trial date yet. While both parties need time to thoroughly prepare this matter for trial, Tavan's prolonged separation from his family is causing added physical and emotional stress.

### III. Tavan Is Not A Danger To The Community And Should Be Released on Bond.

23. The finding of a presumption of dangerousness "cannot be based on evidence that he has been a danger in the past, except to the extent that his past conduct suggests the likelihood of future misconduct." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

24. Tavan is accused of conspiracy and crimes relating to import and export. If Tavan were released on bond, he would not be a danger to the community. These are not inherently

dangerous to the community in Wisconsin. Looking at Tavan's past conduct does not indicate a strong likelihood of future misconduct.

25. Even considering that Tavan mistakenly purchased these two engines in 2013, this is not the same as charges of murder, pedophilia, drug trafficking or any crime that is inherently dangerous to the community.

## IV. Tavan Does Not Present a Risk of Flight

26. Tavan is not a flight risk if released upon the conditions requested by the defense. The conditions proposed by the defense would guarantee that the defendant would have a stable living environment and could stay with his family pending the trial of this matter. Additionally, Tavan has no intention or ability to flee the United States.

27. In another case where a foreign national was released on bond, the Court found that

> "Other operative facts in this case dispel the government's fear of his flight. First, while Hutchins may not own real property in this country, he has rented and furnished an apartment in Los Angeles at substantial personal expense. The government seems to think that ownership of real estate is the only sort of outlay that could tie a defendant to this country, but the Court does not concur." *United States v. Hutchins*, No. 17-CR-124-2-JPS, 2017 U.S. Dist. LEXIS 183385, at *10 (E.D. Wis. Nov. 6, 2017).

28. Like the accused in *Hutchins*, Tavan plans to rent an apartment with his own funds for him and his family to stay in for the duration of this trial. He intentionally rented a 3-bedroom apartment for the comfort of his wife and children. The Lease Agreement begins on March 1, 2018.

29. While Tavan is a foreign national, this does not mean that he is automatically a flight risk. In a similar case, the Eastern District of Wisconsin concluded that "the notion that Hutchins can escape the country without a passport is both true and irrelevant. Not having a passport will at a minimum make this more difficult, and the Bail Reform Act

7

Case 2:17-cr-00122-PP-WED   Filed 02/02/18   Page 7 of 10   Document 12

dangerous to the community in Wisconsin. Looking at Tavan's past conduct does not indicate a strong likelihood of future misconduct.

25. Even considering that Tavan mistakenly purchased these two engines in 2013, this is not the same as charges of murder, pedophilia, drug trafficking or any crime that is inherently dangerous to the community.

## IV. Tavan Does Not Present a Risk of Flight

26. Tavan is not a flight risk if released upon the conditions requested by the defense. The conditions proposed by the defense would guarantee that the defendant would have a stable living environment and could stay with his family pending the trial of this matter. Additionally, Tavan has no intention or ability to flee the United States.

27. In another case where a foreign national was released on bond, the Court found that

> "Other operative facts in this case dispel the government's fear of his flight. First, while Hutchins may not own real property in this country, he has rented and furnished an apartment in Los Angeles at substantial personal expense. The government seems to think that ownership of real estate is the only sort of outlay that could tie a defendant to this country, but the Court does not concur." *United States v. Hutchins*, No. 17-CR-124-2-JPS, 2017 U.S. Dist. LEXIS 183385, at *10 (E.D. Wis. Nov. 6, 2017).

28. Like the accused in *Hutchins*, Tavan plans to rent an apartment with his own funds for him and his family to stay in for the duration of this trial. He intentionally rented a 3-bedroom apartment for the comfort of his wife and children. The Lease Agreement begins on March 1, 2018.

29. While Tavan is a foreign national, this does not mean that he is automatically a flight risk. In a similar case, the Eastern District of Wisconsin concluded that "the notion that Hutchins can escape the country without a passport is both true and irrelevant. Not having a passport will at a minimum make this more difficult, and the Bail Reform Act

does not mandate a set of conditions that will guarantee that the defendant cannot flee." *Id.* at 11.

30. Under the conditions proposed by the defense, Tavan would not be able to flee the United States. Under GPS monitoring, if Tavan removed his monitoring bracelet, the authorities would be notified immediately, and Tavan would also be subject to additional criminal charges for violating the terms of his pretrial release.

31. Once Tavan's wife and children arrive in Wisconsin, Tavan will have no reason to leave the United States as he proceeds with trial to clear his name. As a family man, Tavan would not jeopardize the safety of his wife and children by attempting to flee.

32. In addition, pretrial release on bond would ensure that Tavan stays in an agreed upon radius. In *Hutchins,* the Court found that when the accused's friend paid the bond for the his release, that served as enough incentive for him to appear as required. *Id.* at 11. Here, Tavan's wife and brother will help him pay the bond. These ties are certainly strong enough to prevent Tavan from being a flight risk. (Financial Documentation Available upon request).

33. The Court "may deny release *only* if no conditions will reasonably assure (1) the defendant's appearance and (2) the safety of the community." *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 965 (E.D. Wis. 2008). (Emphasis added).

34. Tavan respectfully requests that this Court conduct a hearing on this motion for release at which time the defense will be prepared to present testimony in support of its request for pretrial release.

## **RELIEF REQUESTED**

For these reasons stated above, Defendant, Resit Tavan, asks that this Court:

A. Conduct a hearing at which time it can verify the representations made concerning the defendant's living conditions if released to the community;

B. Grant him release on personal recognizance or in the alternative unsecured appearance bond in the amount not exceeding $10,000; and,

C. Grant such other, further, and different relief as the Court may deem just and proper under the circumstances.

Respectfully Submitted,

Dated this 2nd day of February 2018.

**/s/ Nejla Lane, Esq.**
Nejla Lane, Esq.
Attorney for Defendant
Lane Keyfli Law, Ltd.
5901 N. Cicero Ave., Ste. 200
Chicago, IL 60646
P: (773) 777-4440

# CERTIFICATE OF SERVICE

I, Nejla K. Lane, an attorney of record for this matter, hereby certify that on February 2, 2018, I caused a true and correct copy of the foregoing to be served upon all counsel of record by filing same with the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Nejla K. Lane Esq.
Nejla K. Lane Esq.